**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

LANG LEONARD,

              Plaintiff,

vs.

KYLE HOWE, individually and in his
official capacity as a law enforcement
officer for the Toledo Police Department;
and CITY OF TOLEDO, IOWA,

              Defendants.

No. 23-CV-82-CJW-MAR

**ORDER**

_____

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................. 3

II.     BACKGROUND .................................................................................... 3

III.    SUMMARY JUDGMENT STANDARD ............................................... 6

IV.    KYLE HOWE'S MOTION FOR SUMMARY JUDGMENT ...................... 8

       A.     Excessive Use of Force (Count I) ................................................. 8

             1.     Excessive Force Standard .................................................. 8

             2.     Qualified Immunity Standard ..........................................10

             3.     Discussion..........................................................................12

       B.     False Arrest (Count II) ................................................................16

C.      Battery (Count III) ...................................................................18

D.      Assault (Count IV).................................................................19

E.      Violation of Substantive Due Process (Count VII) ..........................20

F.      Negligence (Count VIII) .........................................................21

V.      MOTION FOR SUMMARY JUDGMENT BY CITY OF
        TOLEDO, IOWA ....................................................................22

A.      Excessive Use of Force (Count I) ..............................................22

        1.      Applicable Law ..........................................................22

        2.      Discussion.................................................................23

B.      False Arrest (Count II) ...........................................................27

C.      Battery (Count III) and Assault (Count IV)...................................27

D.      Negligent Supervision and Training (Count V) ..............................28

E.      Respondeat Superior (Count VI) ...............................................28

F.      Violation of Substantive Due Process (Count VII) ..........................29

G.      Negligence (Count VIII) .........................................................29

VI.     CONCLUSION......................................................................30

## I. INTRODUCTION

The matters before the Court are defendants' respective motions for summary judgment. On October 17, 2024, defendant City of Toledo ("the City") filed a motion for summary judgment. (Doc. 29). Also on October 17, 2024, defendant Kyle Howe ("Officer Howe") filed a motion for summary judgment. (Doc. 30). Plaintiff, Lang Leonard, timely resisted the City's motion (Doc. 32) and the City timely filed a reply (Doc. 34). On November 7, 2024, plaintiff filed a placeholder-type resistance to Officer Howe's motion (Doc. 33-1), and then filed a supplemental resistance on November 22, 2024 (Doc. 37). After receiving a brief extension, Howe timely filed a reply. (Doc. 41). On December 16, 2024, the Court heard oral argument on the motions. (Doc. 43). On December 26, 2024, Officer Howe filed supplement briefing in response to untimely submissions by plaintiff, with the Court's permission. (Doc. 45). For the following reasons, defendant City of Toledo's motion for summary judgment is **granted**. (Doc. 29). Further, Kyle Howe's motion for summary judgment is **granted**. (Doc. 30).

## II. BACKGROUND

The following background facts are undisputed unless otherwise indicated.[1] The Court will discuss additional facts below as they become relevant to the Court's analysis.

Plaintiff is a 46-year-old man with a long history of criminal charges and convictions, including for possession of methamphetamine, unlawful possession of a firearm, and assault causing bodily injury. At all times relevant to this action, Officer Howe was a police officer for the City of Toledo. On February 7, 2023, Officer Howe,

---

[1] Specifically, the Court is relying primarily on Officer Howe's statement of material facts (Doc. 30-1), which plaintiff admits almost in its entirety (Doc. 37-2). Where plaintiff disputes defendant Howe's facts, the Court has summarized the dispute. The Court has compared the statement of material facts against the appendices the parties provided (Docs. 29-3, 30-3, 32-2, 32-3, 32-4, 32-5, 32-6, 32-7, 32-8, 32-9, 34-2, 37-3, & 37-4) and found the facts set out below supported by those records. Of primary importance is Officer Howe and another officers' body camera video, which were uploaded on the Court's drive and viewed by the Court.

along with additional officers from multiple law enforcement agencies, executed a valid search warrant at plaintiff's residence after police received information about plaintiff's suspected methamphetamine use. The search warrant instructed officers to seize items related to drug possession and obtain a blood or urine sample from plaintiff.

Plaintiff's house has multiple exterior doors. Officer Howe, along with two other officers, first approached a door near the garage of plaintiff's home. Officer Howe yelled "police, search warrant" twice as another officer knocked on the door and immediately before another officer hit the door with a battering ram. As the officers were trying to breach the door with the battering ram, plaintiff emerged from a second door located several steps away, but within a clear line of sight, from the officers. Plaintiff was wearing cold weather clothing, including a large coat, and was holding papers or documents of some sort. The officers saw plaintiff as soon as the second door opened. The officers, including Officer Howe, drew their service weapons and ordered plaintiff to show them his hands and, repeatedly, to get on the ground.

Defendants assert Officer Howe then holstered his firearm and drew his taser as he moved toward plaintiff. According to defendants, plaintiff then bent to one knee and began to argue with the officers, asking "what did I do?" Plaintiff denies defendants accurately summarize this portion of the encounter, but does not offer any reason for his denial or an alternative interpretation of the events. The Court finds defendants' version of the events closely aligns with the body camera videos. The videos clearly show an officer holstering a firearm and drawing a taser, although it is not entirely clear whether the footage shows Officer Howe doing so or whether the other officers did the same. The videos also clearly show plaintiff raising his hands and bending to one knee as the officers approach him and order him to get on the ground. Plaintiff then clearly asks "what did I do?" multiple times as the officers begin to physically engage plaintiff. It is

4

not clear from the video whether defendants' characterization that plaintiff argued with the officers is accurate.

While plaintiff was on one knee, the officers pushed plaintiff to the ground. According to defendants, plaintiff's limbs remained stiff and he braced his left hand against the ground instead of placing it behind his back so he could be placed in handcuffs, which amounted to resisting arrest. Officers asked plaintiff if "he wants to get tased." Plaintiff again denies this portion of the events, but does not offer an alternative interpretation of the events. In the Court's view, the videos, taken singularly and in combination, do not clearly show what is happening with plaintiff's limbs, although the Court can discern that at least one of plaintiff's arms remains outstretched and braced in front of him and an officer asking whether plaintiff wants to be tased.

The parties do not dispute, however, that Officer Howe applied his taser intermittently over the span of roughly twenty seconds as other officers worked to handcuff plaintiff. Officer Howe told plaintiff to "stop resisting" and "put your hands behind your back and we'll stop." Plaintiff responded, "I will" and his hands eventually were placed behind his back, at which point Officer Howe stopped applying his taser. The officers secured plaintiff's hands in cuffs and assisted him to his feet. Roughly one minute elapsed between the time plaintiff stepped outside and the time he was handcuffed.

After officers handcuffed plaintiff, police conducted a sweep and search of the residence. While the search of plaintiff's residence was in progress, the officers detained plaintiff in his enclosed garage for approximately 25 minutes. At some point, Officer Howe adjusted the handcuffs to a more comfortable position. Upon confirming that the search of plaintiff's house was complete, the officers moved plaintiff back inside and released him. Plaintiff was not charged with a crime in connection with the search of his residence.

On September 26, 2023, plaintiff sued defendants in this Court. (Doc. 1). In his Complaint, plaintiff asserted claims against defendants Officer Howe and the City for excessive use of force (Count I), false arrest (Count II), battery (Count III), assault (Count IV), violation of substantive due process (Count VII), and negligence (Count VIII). Plaintiff also brought claims for negligent training and supervision (Count V) and respondeat superior (Count VI) against the City. In Count I, plaintiff brings his claims under Title 42, United States Code, Section 1983. The remaining counts assert state law causes of action. The Court will first address Officer Howe's motion for summary judgment before turning to the City's motion for summary judgment.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." *Id.* at 56(c)(1)(A); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may "show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question," *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted).

6

Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of fact genuine. A mere scintilla of evidence in support of the plaintiff's claims is not enough to avoid summary judgment. *Rohr v. Reliance Bank*, 826 F.3d 1046, 1052 (8th Cir. 2016) (citing *Anderson*, 477 U.S. at 252). In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" such that it "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citation omitted). "The movant is not required by the rules to support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* (citation omitted). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *See Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005).

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam); *Matsushita*, 475 U.S. at 587–88; *see also Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the

record . . . that no reasonable jury could believe' them" (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  Although the Court must draw all inferences in favor of the nonmoving party, the Court cannot rely on "mere speculation, conjecture, or fantasy" to deny a motion for summary judgment.  *Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (internal quotation marks and citations omitted).  A court does "not weigh the evidence or attempt to determine the credibility of the witnesses."  *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004).  "Rather, the court's function is to determine whether a dispute about a material fact is genuine . . . ."  *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996).

## IV.   KYLE HOWE'S MOTION FOR SUMMARY JUDGMENT

### A.   Excessive Use of Force (Count I)

In Count I of his complaint, plaintiff asserts Officer Howe used excessive force in violation of the United States Constitution.  (Doc. 1, at 7–9).  Plaintiff asserts his claim under Title 42, United States Code, Section 1983.

#### 1.   Excessive Force Standard

"Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the Constitution."  *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (internal quotation marks omitted).  A Section 1983 excessive force claim relies on the Fourth Amendment.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989).  The Fourth Amendment's prohibition against unreasonable searches and seizures includes the right to be free from law enforcement officers using excessive force in effectuating an arrest.  *Id.* at 396; *Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002).  "Police officers undoubtedly have a right to use some degree of physical force, or threat thereof, to effect a lawful seizure . . . ."  *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011) (citation omitted); *see also Johnson v. Carroll*, 658 F.3d 819, 825 (8th Cir. 2011) ("Fourth Amendment jurisprudence has long recognized

that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.") (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009)). "[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Brown*, 574 F.3d at 499.

"To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, 'the test is whether the amount of force used was objectively reasonable under the particular circumstances.'" *Henderson v. Munn*, 439 F.3d 497, 502 (8th Cir. 2006) (quoting *Littrell v. Franklin*, 388 F.3d 578, 583 (8th Cir. 2004)) (internal quotation marks omitted). Courts evaluate the reasonableness of an officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. This is because "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 397; *see also Grider v. Bowling*, 785 F.3d 1248, 1252 (8th Cir. 2015) ("The dispositive question is whether the officer's conduct was objectively reasonable under the circumstances, as judged from the perspective of a reasonable officer on the scene at the time the force was applied.").

The reasonableness inquiry is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397; *see also Peterson v. Kopp*, 754 F.3d 594, 600 (8th Cir. 2014) ("An officer's use of force will violate the Fourth Amendment if it is not 'objectively reasonable.'") (quoting *Graham*, 490 U.S. at 397). In conducting this analysis, a court must consider the totality of the circumstances. *Cook v. City of Bella Villa*, 582 F.3d 840, 849 (8th Cir. 2009). Circumstances relevant to the reasonableness of an officer's

9

conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *see also Schoettle v. Jefferson Cnty.*, 788 F.3d 855, 859 (8th Cir. 2015) ("When determining whether unreasonable force was used, courts must give 'careful attention to the facts and circumstances of each particular case,'" including the factors listed in *Graham*, 490 U.S. at 396).

### 2.    *Qualified Immunity Standard*

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). Qualified immunity is "an immunity from suit rather than a mere defense to liability [and] it is effectively lost if a case is erroneously permitted to go to trial." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "[Q]ualified immunity protects officials who make bad guesses in gray areas[.]" *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018).

When a motion for summary judgment rests on a claim of qualified immunity, courts examine two prongs to resolve the claim: (1) the court must decide if the facts established by the record make out a violation of a constitutional right, and (2) "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. Courts have discretion as to which of the two prongs to apply first. *Id.* at 236. In assessing qualified immunity at the motion for summary judgment stage, the court determines the material facts under the Rule 56 standard, but "[o]nce the predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law." *Tlamka v. Serrell*, 244

F.3d 628, 632 (8th Cir. 2001). "On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A plaintiff bears the burden of showing that the law was clearly established. *Estate of Walker*, 881 F.3d at 1060.

For the law to be clearly established "existing law must have placed the constitutionality of the officer's conduct beyond debate. This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal citations and quotation marks omitted). Further, "precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know." *Id.* (internal quotation marks and citations omitted). A right is clearly established by controlling authority, or, absent that, a "robust consensus of cases of persuasive authority," which puts an officer on notice that his conduct is unlawful. *De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

A right can be clearly established without "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Al-Kidd*, 563 U.S. at 741. The Supreme Court has repeatedly cautioned lower courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 613 (2015)). Factually specific precedent is very useful in excessive force cases to determine if the law is clearly established:

> [S]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force

is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue. Precedent involving similar facts can help move a case beyond the otherwise hazy border between excessive and acceptable force and thereby provide an officer notice that a specific use of force is unlawful.

*Id.* at 104–05 (internal citations and quotation marks omitted). This Court has likewise noted "[f]actually analogous cases are highly relevant to the qualified immunity inquiry" in the Fourth Amendment context. *Ogden v. Johnson*, No. C00-0034, 2002 WL 32172301, at *4 (N.D. Iowa Sept. 5, 2002); *see also Tauke v. Stine*, No. C95-1010, 1996 WL 33423375, at *5 (N.D. Iowa Oct. 4, 1996), *aff'd*, 120 F.3d 1363 (8th Cir. 1997). "Failing to 'identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment' is often fatal to a claim outside of obvious cases." *Moore-Jones v. Quick*, 909 F.3d 983, 985 (8th Cir. 2018) (alteration omitted) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam)).

### 3. Discussion

Plaintiff first claims that Officer Howe's takedown and subsequent use of his taser were excessive. For the following reasons, however, the Court finds that Officer Howe's actions were objectively reasonable and he is entitled to qualified immunity under the circumstances.

There is no evidence to suggest that Officer Howe's conduct was unreasonable up to the point the officers forced plaintiff fully to the ground. The search warrant was executed at night without the benefit of a fully lit area. Plaintiff was known to have used methamphetamine in the past and was suspected of using methamphetamine around the time of the search. Plaintiff had previous convictions related to firearm possessions. Plaintiff was also wearing a heavy coat that could have easily concealed weapons or dangerous materials. Then, plaintiff exited from a different door than the officers were

knocking on and did not immediately comply with the officers' orders. Instead of getting on the ground, plaintiff got down to one knee. Under clearly established law, it is reasonable for officers to force an arrestee to the ground when the arrestee declines to follow officer orders to do so. *See Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017) (finding an officer's use of force was reasonable when he executed a spin takedown on an arrestee who declined to follow officer's instructions). It was even more reasonable here where it was dark, plaintiff was a suspected methamphetamine user who had prior firearm convictions, and plaintiff exited the house from a different exit wearing a heavy coat.

Officer Howe's use of his taser after plaintiff was on the ground is a closer question. After plaintiff was on the ground, the video is more obstructed, and it is difficult to see exactly what was occurring. The video clearly shows plaintiff had one arm extended and he was not bringing it behind his back so he could be cuffed. Plaintiff says this was involuntary and unintentional and that he was trying to comply with the commands. Officer Howe, however, insists that he thought plaintiff was intentionally resisting arrest. The video does not clearly validate either plaintiff or Officer Howe's testimony and the only thing that is clear is that plaintiff's arms did not go behind his back to be cuffed until after he was tased. The officers' commands for plaintiff to stop resisting and to put his hands behind his back, and plaintiff's failure to deny resisting and his statement that he "will" put his hand behind his back tend to corroborate defendants' position that plaintiff was resisting and was, at least initially, willfully not placing one hand behind his back.

Under established law on taser use, Officer Howe's conduct was reasonable. The Eighth Circuit Court of Appeals has upheld the use of force where a suspect is non-compliant and resists arrest or ignores commands from law enforcement. *See Jackson v. Stair*, 944 F.3d 704, 711 (8th Cir. 2019). Further, "an officer may interpret a suspect

laying on his stomach with his hands underneath him and refusing to give his hands to officers as resistance." *Kohorst v. Smith*, 968 F.3d 871, 878 (8th Cir. 2020) (citing *Carpenter v. Gage*, 686 F.3d 644, 649–50 (8th Cir. 2012)). "Unarmed, passively resisting subjects can pose a threat necessitating the use of taser force." *Cravener v. Shuster*, 885 F.3d 1135, 1140 (8th Cir. 2018).

In *Kohorst v. Smith*, 968 F.3d 871 (8th Cir. 2020), a case on which Officer Howe relies, Brett Kohorst ("Kohorst") was visibly intoxicated and suspected of being involved in an altercation at a different location when an officer approached him. 968 F.3d at 874. The officer repeatedly ordered Kohorst to sit on the squad car and remove his hands from his pockets. *Id.* It is unclear whether Kohorst comprehended any of the officer's instructions in his intoxicated state. *Id.* Kohorst eventually took out his wallet to provide his identification to the officer and when the officer reached for the wallet, Kohorst jerked it away. *Id.* The sudden movement resulted in the officer putting Kohorst in a hold which led to a struggle. *Id.* Kohorst refused to comply with the officer's instructions to put his arms behind his back and the officer initiated a takedown. *Id.* at 874–75. While on the ground, the officer directed Kohorst to place his hands behind his back. *Id.* at 875. Kohorst put one arm behind his back, but the other arm stayed underneath him or at his side as he appeared to roll from side to side. *Id.* The officer tased Kohorst two times in barb mode before he could pull Kohorst's arms from under him and place his hands in cuffs. *Id.* Although it considered it a close call, the Eighth Circuit ultimately found the officer's actions "did not violate a clearly established right and the district court did not err in granting qualified immunity." *Id.* at 878.

The matter before the Court here is a close call as well. It is not clear from the videos whether plaintiff was intentionally refusing to put his hands behind his back to be cuffed, but as noted the statements exchanged between the officers and defendant tend to show he was willfully refusing at first to place one of his hands behind his back. Officer

14

Howe's use of the taser resembles the officer's taser use in *Korhorst*, where it was also not clear whether Kohorst was intentionally resisting arrest. Like in *Kohorst,* the videos here plainly show plaintiff has at least one arm that he does not put behind his back. The video shows plaintiff with his left arm outstretched where it remains as officers yell for him to place his hands behind his back. After providing warnings that he was going to do so, Officer Howe then gives two short bursts from his taser in barb mode, just as the officer did in *Kohorst* to get Korhorst to comply. Because plaintiff's arms remained in front of him or at his sides after the orders and warnings, a reasonable officer in Officer Howe's position could have perceived plaintiff to be resisting arrest, thereby necessitating the use of taser force. *See id.* at 878 (citing *Jackson*, 944 F.3d at 713).

Plaintiff argues this case is most similar to *Shekleton v. Eichenberger*, 677 F.3d 361 (8th Cir. 2012), in which the Eighth Circuit found an officer's use of a taser unreasonable. In *Shekleton*, an officer driving on patrol thought he saw Justin Shekleton ("Shekleton") arguing with someone outside a bar. *Id.* at 363. By the time the officer turned his vehicle around, Shekleton was alone outside the bar. *Id.* at 364. Still, the officer asked Shekleton about the argument, which Shekleton denied having been involved in. *Id.* The officer then asked Shekleton to back up, to which he complied, and to place his hands behind his back. *Id.* Shekleton told the officer he could not place his arms behind his back due to a disability, which was well known in the small town and which the officer stated he knew about. *Id.* at 364–65. Still, the officer attempted to handcuff Shekleton and the two lost their balance and fell over. *Id.* at 365. While on the ground, the officer discharged his taser into Shekleton. The Eighth Circuit found the officer's use of the taser was unreasonable. *See id.* at 367.

The facts from the *Shekleton* case are entirely different than the evidence shows here. In *Shekleton* the officer was looking for an issue where one did not exist when he concluded without any evidence that Shekleton had been engaged in an argument. Here,

15

Officer Howe was executing a search warrant that was based on an undisputed finding of probable cause. In *Shekleton*, the officer stated he knew Shekleton could not place his hands behind his back at the time of the arrest. Here, on the other hand, the officers were dealing with a known methamphetamine user who was suspected of actively using methamphetamine. Plaintiff also had firearm possession convictions at the time of the search. Importantly, plaintiff here did not comply with the officer's requests whereas Shekleton complied with the officer's orders to step away from the street and informed the officer that he physically could not place his arms behind his back. In short, the Court sees very few similarities between *Shekleton* and the case here.

Under Eighth Circuit law, Officer Howe's use of the taser was an objectively reasonable response to the resistance he reasonably perceived. Officer Howe is therefore entitled to qualified immunity on plaintiff's claim for excessive force. Thus, the Court **grants** Officer Howe's motion on Count I.

### B.    False Arrest (Count II)

In Count II of his complaint, plaintiff alleges a common law false arrest claim against Officer Howe. Officer Howe argues plaintiff's brief detention in his garage as the search was ongoing was permissible under clearly established law, and therefore there was no false arrest. (Doc. 30-2, at 12). Plaintiff makes several inconsistent arguments in response. On the one hand, plaintiff seems to agree with Officer Howe that he could be detained while the officers conducted the search. (Doc. 37-1, at 8). Plaintiff, however, also asserts that "the detention in the garage was simply an extension of the violation of this right to be free from excessive force." (*Id.*). But then plaintiff also asserts the false arrest occurred when Officer Howe "[held] Plaintiff at gun point, pull[ed] out a taser, tackle[d] Plaintiff, and then deploy[ed] said taser . . . *prior* to the search being conducted." (*Id.*).

16

Under Iowa law, "a claim [for false arrest] has two elements: '(1) detention or restraint against one's will, and (2) unlawfulness of the detention or restraint.'" *Thomas v. Marion Cnty.*, 652 N.W.2d 183, 186 (Iowa 2002) (per curiam) (quoting *Kraft v. City of Bettendorf*, 359 N.W.2d 466, 469 (Iowa 1984)); *see also McElree v. City of Cedar Rapids*, 983 F.3d 1009, 1018 (8th Cir. 2020) ("And a false arrest occurs only if there is an unlawful detention or restraint.").

First, there is no genuine dispute that plaintiff's detention in his garage while the officers searched his home was lawful. It is clearly established that "officers executing a search warrant for contraband have the authority to detain the occupants of the premises while a proper search is conducted." *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (internal quotations omitted); *see also id.* at 100 (finding a 2- to 3-hour detention in handcuffs in an occupant's garage as her residence was searched was reasonable). Plaintiff agrees. (Doc. 37-1, at 8) ("Clearly, Defendant Howe had the limited right to detain Plaintiff while the search was conducted.").

Here, the undisputed evidence shows that plaintiff was handcuffed in his garage for approximately 25 minutes while officers conducted a search of his residence. The search was conducted under a valid search warrant, which officers read to plaintiff at the start of the search. Officers released plaintiff at the conclusion of the search. The entire detention in the garage was captured on unobstructed body cam footage. Thus, plaintiff's detention in his garage for the duration of the search is not a basis for a false arrest claim.

Second, plaintiff argues that he was unlawfully detained or restrained when Officer Howe pointed a gun and taser at him and tackled and tased him before the search started. (Doc. 37-1, at 8). Plaintiff's argument is at odds with his concession that he could be detained during a search. Under plaintiff's theory, an occupant cannot be detained until officers begin searching the property. This theory is unsupported by the caselaw.

In *Muehler*, the United States Supreme Court reasoned that three law enforcement interests justify detaining an occupant during a search: "preventing flight in the event that incriminating evidence is found; minimizing the risk of harm to the officers; and facilitating the orderly completion of the search[.]" 544 U.S. at 98 (internal quotations omitted). Plaintiff concedes that Officer Howe initially detained plaintiff to keep plaintiff at the premises while officers searched the premises. (Doc. 37-1, at 8–9). That justification falls squarely within the Supreme Court's reasoning of preventing occupants from fleeing during the search and minimizing the risk of harm to officers. Plaintiff's theory also belies the realities of executing search warrants. The search often starts as officers are working to secure the premises as officers are on alert and observing their surroundings. Drawing a distinction between a search and the time before a search would force officers, and judges, to draw arbitrary lines obscured by the realities of intense situations.

If plaintiff is arguing the way he was detained was unlawful, there is already a remedy for that via the constitutional excessive force claim. Plaintiff's attempt to rename his excessive force claim, for which a remedy is already available, is unavailing.

Thus, summary judgement is **granted** in favor of Officer Howe on plaintiff's false arrest claim against him.

### C. Battery (Count III)

In Count III of his complaint, plaintiff asserts a common law battery claim against Officer Howe. (Doc. 1, at 10–11). For the same reasons stated in Section IV(A)(2), the Court finds Officer Howe is not liable for battery.

Under Iowa law,

[a]n actor is subject to liability to another for battery if
a. he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
b. an offensive contact with the person of the other directly or indirectly results.

18

*Nelson v. Winnebago Indus., Inc.*, 619 N.W.2d 385, 388–89 (Iowa 2000) (quoting Restatement (Second) of Torts § 18(1) (Am. Law. Inst. 1965)). An officer, however, may use any force which the officer "reasonably believes to be necessary to effect the arrest or to defend any person from bodily harm while making the arrest." Iowa Code § 804.8(1). Iowa law applies the same "objective reasonableness" standard under Section 804.8 as for determining if an officer has used excessive force under the Fourth Amendment. *See Chelf v. Civ. Serv. Comm'n*, 515 N.W.2d 353, 355–56 (Iowa Ct. App. 1994) (holding that the "reasonableness" inquiry under Iowa Code Section 804.8 is the same objective standard applied by the United States Supreme Court in *Graham*).

Because the Court has found there is no genuine issue of material fact that Officer Howe's conduct was objectively reasonable under the Fourth Amendment and he is entitled to qualified immunity, so too must the Court find no genuine issue of material fact exists that Officer Howe's conduct was reasonable under Iowa Code Section 804.8.

Thus, the Court **grants** Officer Howe's motion for summary judgment on plaintiff's battery claim, Count III.

### D.     *Assault (Count IV)*

In Count IV of his complaint, plaintiff asserts a common law assault claim against Officer Howe. (Doc. 1, at 11–12).

A plaintiff alleging common law assault must prove either the existence of an act "intended to put another in fear of physical pain or injury" or "an act intended to put another in fear of physical contact which a reasonable person would deem insulting or offensive" and that "the victim reasonably believes that the act may be carried out immediately." *White v. Harkrider*, 990 N.W.2d 647, 656 (Iowa 2023). A police officer commits assault by using force that the officer "d[id] not reasonably believe . . . was necessary in the circumstances." *Johnson v. Civ. Serv. Comm'n*, 352 N.W.2d 252, 257 (Iowa 1984).

19

Again, the Court already found there is not a genuine issue of material fact that Officer Howe's conduct was objectively reasonable under the Fourth Amendment and he is entitled to qualified immunity. For the same reasons, the Court finds Officer Howe's conduct was reasonable under the state law claims and does not establish assault.

Thus, the Court **grants** Officer Howe's motion for summary judgment on plaintiff's assault claim, Count IV.

### E. *Violation of Substantive Due Process (Count VII)*

Plaintiff asserts a claim for violation of substantive due process against Officer Howe in Count VII of his complaint. (Doc. 1, at 14–15). Officer Howe and plaintiff agree on the applicable standards for substantive due process claims and that an excessive force claim is generally not available under a substantive due process theory. (Docs. 30-2, at 13–14; 37-1, at 9).

"[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at 395. Furthermore, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham*, 490 U.S. at 395). Plaintiff thus cannot pursue his excessive force claim via the Fourteenth Amendment and it fails as a matter of law.

Officer Howe is thus entitled to summary judgment on Count VII and the Court **grants** Officer Howe's motion for summary judgment on Count VII.

20

### F. Negligence (Count VIII)

Officer Howe moves for summary judgment on plaintiff's negligence claim against him (Count VIII). (Docs. 30, at 3; 30-2, at 14–15). Plaintiff does not resist Officer Howe's motion. (Doc. 37-1, at 9). Courts may grant summary judgment as to unresisted claims if the motion is properly supported. *See, e.g.*, *White v. Kautzky*, 269 F. Supp. 2d 1054, 1057, 1060 (N.D. Iowa 2003) (affirming magistrate judge's grant of summary judgment "because the motion was properly supported and unresisted as to the class action claims").

Under Iowa law, "[n]egligence is conduct that falls short of the standard of care established by law for the protection of others against unreasonable risks of harm." *Benham v. King*, 700 N.W.2d 314, 317 (Iowa 2005). Generally, a negligence claim requires proof of: "(1) the existence of a duty owed by the defendant to conform to a standard of care, (2) the failure to conform to the standard, (3) proximate cause, and (4) damages." *Id.* (citing *Stotts v. Eveleth*, 688 N.W.2d 803, 807 (Iowa 2004)). Generally, "the very essence of negligence is inadvertence." *La Sell v. Tri-States Theatre Corp.*, 11 N.W.2d 36, 54 (Iowa 1943) (Smith, J., dissenting) (quoting *Cahill v. Ill. Cent. R.R.*, 125 N.W. 331, 333 (Iowa 1910)).

Here, there is no evidence or argument to support a negligence claim. Specifically, plaintiff has not presented any allegations, arguments, or evidence that Officer Howe acted inadvertently. To the contrary, plaintiff repeatedly asserts that his claim is based on Officer Howe's intentional use of force. (Doc. 30-3, at 49). Plaintiff concedes this point by explicitly agreeing with Officer Howe's argument. (Doc. 37-1, at 9).

Summary judgment is thus **granted** in favor of Officer Howe on plaintiff's negligence claim, Count VIII.

## V.      MOTION FOR SUMMARY JUDGMENT BY CITY OF TOLEDO, IOWA

Plaintiff asserts eight causes of action against the City. (Doc. 1). Plaintiff asserts the same claims against the City as it does against Officer Howe, although with slightly different theories of liability. Plaintiff also asserts two additional claims for negligent supervision and training (Count V) and Respondeat Superior (Count VI) against the City. (*Id.*). The Court will consider each in turn.

### A.      Excessive Use of Force (Count I)

Plaintiff first brings a claim against the City for excessive use of force in violation of the Fourth Amendment via Title 42, United States Code, Section 1983 (Count I). (Doc. 1, at 7). All the allegations in Count I of plaintiff's complaint relate exclusively to Officer Howe's conduct and say nothing about the City's conduct. (*Id.*, at 7–9). In his resistance brief, however, plaintiff argues the City is liable because it acted with deliberate indifference or tacit approval regarding Officer Howe's persistent pattern of misconduct and that there were "broader customs endorsed by the City" that allowed for the misconduct to continue. (Doc. 32-1, at 7–8). At oral argument, plaintiff clarified that the custom referred to in his briefing was a failure to investigate misconduct.

#### 1.      Applicable Law

"[A] local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [Section 1983]." *Id.* "Specifically, '[§] 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, . . . (2) an unofficial custom, . . . or (3) a deliberately indifferent failure to train or supervise[.]" *Watkins v. City of St. Louis*, 102 F.4th 947, 953 (8th Cir. 2024) (quoting *Corwin v. City*

*of Independence*, 829 F.3d 695, 699 (8th Cir. 2016)).  The plaintiff "must prove that a municipal policy or custom was the 'moving force [behind] the constitutional violation.'" *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (quoting *Monell*, 436 U.S. at 694).

"[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id.*  To show a "custom," on the other hand, a plaintiff must show: "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom[.]"  *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014).

A municipality may also be subject to liability for inadequately training its employees if the city's training practices were inadequate, the city was indifferent to the rights of others in adopting the training practices, and the deficiencies in the training practices caused the injury.  *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010).

### 2.    Discussion

Here, there is no evidence whatsoever of an official policy that resulted in a constitutional violation, and plaintiff does not appear to argue otherwise.  A constitutional claim against the City, therefore, can only survive if there is evidence of a custom that caused plaintiff's injury.  In his response brief, plaintiff argues three of the City's customs caused plaintiff's injury, including: inadequate training and supervision of Officer Howe, a pattern of unconstitutional searches and seizures, and the failure to discipline officers for misconduct.  At oral argument plaintiff added a fourth custom, failure to investigate

allegations against officers. The Court will first address the evidence cited in support of this claim and will then discuss whether it is sufficient to maintain plaintiff's claim.

By the Court's count, there are five pieces of evidence the Court should consider in analyzing constitutional claims against the City: (1) citizen complaints lodged against Officer Howe in March 2021 relating to an investigation in Toledo, Iowa; (2) a total of five lawsuits (including this lawsuit) against Officer Howe and the City filed in the United States District Court for the Northern District of Iowa alleging infringement of constitutional and state rights; (3) a lawsuit filed against Officer Howe in the Southern District of Iowa; (4) a counseling document memorializing a discussion the Toledo Chief of Police had with Officer Howe regarding an arrest Officer Howe had taken part in; and (5) a memo dated March 14, 2021 describing an instance in which Officer Howe allowed a civilian in his patrol car without authorization. Taken individually and together, these do not support a Section 1983 claim against the City.

First, there is no evidence of a deliberate indifference or tacit authorization of a pattern of unconstitutional searches and seizures. The five lawsuits (including this one) filed in this Court against Officer Howe and the City alleging constitutional violations are the only possible evidence of there being multiple instances of constitutional violations, but they fall short. For starters, these are all still based on allegations found in a series of complaints. There has been no adjudication finding that Officer Howe is liable for constitutional violations. The allegations in the complaints are not sufficient as evidence. *See EEOC v. CRST Van Expedited, Inc.*, No. C07-0095, 2009 WL 1033161, at \*4 (N.D. Iowa Apr. 16, 2009) ("[Plaintiff] cannot rely on unsubstantiated complaints to successfully resist a motion for summary judgment, or at trial. Facts, not mere allegations, are required to successfully prove a pattern or practice . . ..").

Further, the five lawsuits were all filed within the span of approximately nine months.[2] There is no evidence that any of the plaintiffs in any of the five cases filed complaints with the City of Toledo or the police department. Nor is there any other evidence that the City had any notice of the alleged violations. Even the incident giving rise to the claim in the most recent lawsuit allegedly occurred on May 7, 2022, over a year before the first lawsuits were filed. The City cannot be said to have been deliberately indifferent or to have tacitly approved conduct that was never brought to its attention via citizen complaints or any other means. Also, there is no evidence in the record that there were complaints against other officers for violating individual's constitutional rights.

Second, for the same reasons discussed above, the five lawsuits against Officer Howe and the City are not evidence of a custom of not disciplining officers for constitutional violations. That is, the City cannot discipline an officer for a constitutional violation when it was not made aware that there were complaints about alleged violations. The other evidence also does not support a failure to discipline theory. It is true there is no evidence the City formally disciplined Officer Howe after the citizen complaints were lodged against him in March 2021 or after he was seen giving a civilian an unauthorized ride in his patrol vehicle, but this does not amount to a custom resulting in constitutional violations. In fact, the March 2021 citizen complaints against Officer Howe were investigated by Marquess Law Offices, which found no evidence of wrongdoing. Officer Howe could not be disciplined for not violating procedures. There is no evidence that the incident involving the unauthorized civilian ride along required formal discipline beyond the write-up that went into his file. Even if additional discipline was warranted,

---

[2] This case was the first of the five cases against Officer Howe and the City, and the complaint was filed on September 26, 2023. The most recent case, *Clark v. Howe et al.*, was initiated with the filing of the complaint on May 7, 2024. *See* Doc. 3, *Clark v. Howe*, No. 24-cv-49-CJW-MAR, N.D. Iowa.

this single example of not disciplining Officer Howe is not enough to raise to a level of a custom that caused a constitutional violation.

Third, and for largely the same reasons, there is no evidence there was a custom of deliberate indifference of failing to investigate claims. For the same reasons, the five complaints filed in this Court against Officer Howe and the City do not establish a custom of failing to investigate claims. The other evidence also does not support a custom of failing to investigate, and in fact, supports a finding that the City did investigate claims. As discussed, after the citizen complaints were filed against Officer Howe in March 2021, the Marquess Law Offices investigated the complaints and found no evidence of wrongdoing. After another incident involving the arrest of Pedro Rodriguez in August 2022, the Chief of Police investigated the arrest and provided counseling to Officer Howe on how to improve his policing. To the extent the evidence shows anything, it shows that the City and police department did investigate claims involving officers.

At oral argument, plaintiff also argued that the City should have investigated the lawsuit filed against Officer Howe in the United States District Court for the Southern District of Iowa. The lawsuit, however, was resolved before trial and was never adjudicated on the merits. Regardless, this single instance of not looking into an allegation that occurred before Officer Howe was employed with the City does not rise to the level of a custom of not investigating claims against officers.

Last, for all the reasons already stated, there is no evidence that the City had a custom of failing to train and supervise its officers. As for the City's training, the record contains certificates confirming Officer Howe's initial law enforcement academy training, and his completion of additional training throughout his time with the City of Toledo police department. In addition to the formal training programs, memos in Officer Howe's personnel file show that Officer Howe was given informal counseling after the Pedro Rodriguez arrest. There is simply no evidence that the City did not properly train its

26

officers. As for the City's supervision of its officers, the evidence discussed above shows that the City acted, whether it be through investigations or counseling, as soon as it became aware of issues. To the extent plaintiff argues the complaints filed in this Court show the City had a custom of not supervising their officers because it did not even know about the allegations until lawsuits were filed, the Court disagrees. These are mere allegations and there has been no adjudication on the merits of these claims.

The Court therefore **grants** the City's motion for summary judgment on Count I.

### B. *False Arrest (Count II)*

In Count II, plaintiff asserts a claim for false arrest against the City. All the allegations in Count II of plaintiff's complaint relate exclusively to Officer Howe's conduct and say nothing about the City's conduct. (*Id.*, at 7–9). Plaintiff also does not argue why the City could be liable for false arrest, either in relation to or independent of his claim for false arrest involving Officer Howe.

The Court already discussed false arrest as it relates to Officer Howe above. For all the reasons discussed, and for the additional reason that plaintiff has not alleged anything specific to the City on his false arrest claim, the Court **grants** summary judgment in favor of the City on plaintiff's false arrest claim against it.

### C. *Battery (Count III) and Assault (Count IV)*

Plaintiff asserts claims for battery and assault against the City. (Doc. 1, at 10–12). Plaintiff, however, does not allege any facts against the City in the battery and assault sections of his complaint. Plaintiff's only arguments in his resistance brief on assault and battery are tied in with his respondeat superior claims. (Doc. 32-1, at 8–9). The Court must conclude, therefore, that plaintiff's battery and assault claims against the City are premised on and depend entirely on the claims against Officer Howe.

The Court has already determined that judgment shall enter in favor of Officer Howe on the assault and battery claims because the evidence indisputably shows that

Officer Howe acted reasonably and is entitled to qualified immunity. Because the claims against the City rely on the claims against Officer Howe, judgment must also enter in favor of the City on plaintiff's assault and battery claims.

Thus, the Court **grants** summary judgment in favor of the City on plaintiff's battery (Count III) and assault (IV) claims.

### D.      *Negligent Supervision and Training (Count V)*

In Section V(A)(2) above, the Court discussed in detail why none of the evidence in the record shows a failure by the City to supervise and train its officers. To the contrary, the evidence shows the City does supervise and train its officers, as well as investigate and discipline officers when necessary. Plaintiff does not argue there is any standard or analysis required for negligent supervision and training that is different than the analysis under the constitutional claims. Thus, the Court's reasoning in Section V(A)(2) is fully incorporated here. There is no genuine dispute that the City supervised and trained its officers and thus, the court **grants** summary judgment in favor of the City on plaintiff's Count V against the City.

### E.      *Respondeat Superior (Count VI)*

Plaintiff next asserts a claim for respondeat superior against the City. (Doc. 1, at 13–14).

Plaintiff and the City both agree that it "is well established in Iowa that under the common law the master and servant may each and both be liable for a servant's torts committed within the course of employment." *Sandman v. Hagan*, 154 N.W.2d 113, 117 (Iowa 1967); *see also* (Docs. 29-2, at 8; 32-1, at 8). Under this standard, the employer can only be liable for the employee's torts if the employee committed a tort. Here, the Court has already determined Officer Howe did not commit a tort. The Court also found Officer Howe did not commit a constitutional violation. There is no

28

underlying employee action that the City could be liable for under a respondeat superior theory of liability.

Thus, the Court **grants** summary judgment in favor of the City on plaintiff's respondeat superior claim (Count VI).

### F.    *Violation of Substantive Due Process (Count VII)*

In Count VII, plaintiff alleges a claim for violation of substantive due process against the City.  (Doc. 1, at 14–15).

The Court has already discussed the substantive due process claim as it related to Officer Howe above in Section IV(E).  Plaintiff has not alleged anything specific to the City or made any argument that would lead to a different result as it applies to the City.  The reasons discussed in Section IV(E) therefore apply to the City as well.

Thus, the Court **grants** the City's motion for summary judgment on Count VII for violation of substantive due process.

### G.    *Negligence (Count VIII)*

The City moves for summary judgment on plaintiff's negligence claim against it (Count VIII).  (Doc. 29-2, 11–12).  Plaintiff resists the City's motion.  (Doc. 32-1, at 9–10).

Under Iowa law, "[n]egligence is conduct that falls short of the standard of care established by law for the protection of others against unreasonable risks of harm." *Benham*, 700 N.W.2d at 317.  Generally, a negligence claim requires proof of: "(1) the existence of a duty owed by the defendant to conform to a standard of care, (2) the failure to conform to the standard, (3) proximate cause, and (4) damages." *Id.* (citing *Stotts*, 688 N.W.2d at 807).  Generally, "the very essence of negligence is inadvertence." *La Sell*, 11 N.W.2d at 54 (Smith, J., dissenting) (quoting *Cahill*, 125 N.W. at 333).

The Court has already found that the City did not act negligently in training and supervising Officer Howe.  The Court also found in favor of Officer Howe on plaintiff's

constitutional claims and state law tort claims.  Thus, regardless of whether the City had a generalized duty to protect citizens, there is no evidence that the City did not conform to that standard for all the reasons already discussed.

Summary judgment is thus **granted** in favor of the City on plaintiff's negligence claim (Count VIII).

## VI.    CONCLUSION

For these reasons, the Court **grants** defendant Kyle Howe's motion for summary judgment.  (Doc. 30).  The Court also **grants** the City of Toledo's motion for summary judgment.  (Doc. 29).  Judgment shall be entered in favor of Kyle Howe and the City of Toledo.

**IT IS SO ORDERED** this 7th day of January, 2025.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa